IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA MARIE BREAZEALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-058-SPS |
| | ) |
| MICHELLE A. KING, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Amanda Marie Breazeale, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*.

§ 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

Claimant was born on April 30, 1990, and was 29 years old on the alleged amended disability onset date. (Tr. 29). She was 33 years old at the time of the most recent administrative hearing. (Tr. 31). She has completed the 11th grade and has past relevant work experience working as an assistant manager. (Tr. 29, 50). Claimant asserts she has been unable to work since January 1, 2020. (Tr. 294).

### Procedural History

The Court has jurisdiction under 42 U.S.C. § 405(g). Claimant applied for disability insurance benefits pursuant to Title II of the Social Security Act in 2021, alleging disability beginning on March 8, 2018. (Tr. 45). Her amended onset date is January 1, 2020. (Tr. 45, 185-86). Claimant's application was denied initially and on reconsideration. Following an administrative hearing, ALJ Deidre Dexter issued a written opinion on October 19, 2023, determining Claimant was not disabled. (Tr. 14-35). The Appeals Council denied review, making the ALJ's written opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-6). *See* 20 C.F.R. § 404.984(d).

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had. severe impairments including Hashimoto's, obesity, osteoarthritis, migraines, depressive disorder, and anxiety disorder. (Tr. 20). The ALJ assessed Claimant suffered from some nonsevere impairments, including irritable bowel syndrome, gastritis, bradycardia, and unspecified chest pains. (Tr. 21-22).

Next, she found that Claimant's impairments did not meet a listing. (Tr. 22-23). At step four, she found that Claimant retained "the residual functional capacity ("RFC") to perform light work with the following qualifications:

> the claimant is able to lift, carry, push, or pull up to 10 pounds frequently and 20 pounds occasionally. She is able to sit up to 6 hours in an 8-hour workday and is able to stand and/or walk up to 4 hours in an 8-hour workday. The need to change positions can be accommodated by the 15-minute morning and afternoon break and the 30-minute lunch period. The claimant is able to occasionally climb ramps or stairs, kneel, or crawl. She is able to frequently stoop or crouch. She is able to frequently handle or finger. A job should not involve climbing ladders, ropes, or scaffolds. The claimant is able to understand, remember, and perform simple tasks. She is able to sustain attention and concentration for up to 2 hours at a time, with routine breaks, when performing simple tasks. The claimant is able to sustain the mental demands associated with performing simple tasks throughout an ordinary workday and workweek. She is able to interact with supervisors as needed to receive work instructions and is able to occasionally interact with coworkers. She is able to interact with the public if needed to refer a member of the public to a supervisor or coworker for assistance, but a job should not involve customer service or other work where interacting with the public is an essential function of the job.

(Tr. 23-24). At step five, the ALJ found that this RFC would allow Claimant to perform other work existing in significant numbers in the national economy. (Tr. 29-30). The ALJ thus concluded that Claimant was not disabled under the Act. (Tr. 31).

## Review

The relevant evidence before the ALJ reflects that in 2020, Claimant reported joint pain primarily in her hands and feet. Lab work was ordered (Tr. 525-527), but the results were not consistent with either lupus or rheumatoid arthritis. (Tr. 521). Claimant attended a physical CE with Subramaniam Krishnamurthi, M.D., on April 25, 2022. She endorsed Hashimoto's with pain throughout her joints, high blood pressure, anxiety, endometriosis, headaches, and Raynaud's. Examination of the extremities was unremarkable, and sensation, motor, and reflexes were intact.

Range of motion throughout the joints and spine was normal, as was Claimant's gait. Strength in the upper and lower extremities was 5/5. (Tr. 320-328).

Claimant's primary care provider ("PCP") diagnosed her with unspecified osteoarthritis and prescribed Hydroxychloroquine in August 2022 (Tr. 431), the dosage of which was increased in November 2022, per Claimant's request. (Tr. 418-19). On February 28, 2023, Claimant reported joint pain and swelling. Her PCP ordered lab work but did not change the dosage of Hydroxychloroquine. (Tr. 412-13).

Claimant saw a rheumatologist on July 25, 2023, reporting diffuse joint pain and swelling, morning stiffness, and muscle tenderness. She explained Hydroxychloroquine had been discontinued due to concerns it was affecting her eyes. However, it had been very effective, and she wanted to resume taking it; she was advised to get a second opinion since it was rare for that medication to affect vision so soon. Physical examination revealed tenderness in the left elbow and bilateral wrists, hips, knees, ankles, fingers, and toes but no pedal edema, intact sensation and motor strength, and normal gait. The rheumatologist started Claimant on Sulfasalazine and ordered lab work. (Tr. 595-616).

Claimant's PCP prescribed Topiramate and generic Fioricet for migraines in August 2021 (Tr. 466), increasing the dosage of the former a month later. (Tr. 459). In March 2022, Claimant reported that Topiramate was ineffective, and her prescription was changed to Sumatriptan and generic Fioricet discontinued. (Tr. 438-39). Claimant reported daily headaches on February 28, 2023, but her PCP did not adjust the Sumatriptan dosage, advising Claimant to use ice packs or warm cloths to help with pain. (Tr. 409-413). Neurological examinations for the last few years have been unremarkable. (Tr. 320-328, 413, 606, 657).

In 2021, Claimant's PCP diagnosed her with a goiter and noted fluctuating thyroidstimulating hormone ("TSH") levels with symptoms of Hashimoto's. (Tr. 471, 475). After Hashimoto's was confirmed, the PCP increased the dosage of Levothyroxine in August 2021 (Tr. 465), and again in August 2022 (to 100 mcg) (Tr. 431) but made no further adjustments as of the last PCP record in the file, from February 2023. (Tr. 410). Claimant reported that same dose, 100 mcg, to her rheumatologist in July 2023. (Tr. 596). Her recent TSH levels have been in the normal range, with the exception of one reading in March 2022. (Tr. 385, 388, 394, 396). Claimant's BMI has ranged from approximately 30-33 throughout the record. (Tr. 335-476, 597).

Claimant testified to reduced exertional and manipulative abilities, diffuse joint pain and stiffness especially in her toes and fingers, limiting her ability to use her hands, loss of sensation in her hands, dizziness, Hashimoto's flares every 2 to 3 weeks since being taken off Hydroxychloroquine, daily headaches that can evolve into migraines, which are worsened with heat, bending, and moving around, brain fog, fatigue, loss of energy, insomnia, depression, and suicidal ideation during Hashimoto's flares. The ALJ noted "the exact cause of the claimant's diffuse joint/muscle pain, stiffness, and swelling is unclear as rheumatology lab work from July 2023 was not available at the time the decision was issued (and previous lab work in 2020 had not indicated an autoimmune condition), and both Hashimoto's and arthritis (osteo or rheumatoid) can cause the claimant's symptoms. Regardless of the source of these symptoms, Claimant did evidence tenderness in the left elbow and bilateral wrists, hips, knees, ankles, fingers, and toes at her rheumatology examination in July 2023, but that same examination also revealed no pedal edema, intact sensation and motor strength, and normal gait." (Tr. 26-27).

Dr. Krishnamurthi noted similar findings at the CE in April 2022: intact sensation, motor, and reflexes, normal range of motion throughout the joints and spine, normal gait, and 5/5 strength

throughout the extremities. (Tr. 320-28). Claimant's PCP had prescribed Hydroxychloroquine in August 2022 and Claimant continued with it until February 2023, reporting it was effective to both her PCP, and to her rheumatologist. The rheumatologist advised Claimant to obtain a second ophthalmological opinion, especially as the Claimant herself wanted to resume taking the medication. (Tr. 595-616).

At the hearing, Claimant testified to Hashimoto's flares every 2 to 3 weeks since being taken off Hydroxychloroquine (which her PCP prescribed for osteoarthritis). According to the PCP records in the file, Claimant's dosage of Levothyroxine has remained at 100 mcg since August 2022, which Claimant confirmed at the rheumatology visit. (Tr. 596).

In September 2021, Claimant told her PCP she was experiencing anxiety and was started on Clonazepam and Citalopram. (Tr. 458-59). The PCP continued to prescribe Clonazepam as needed into 2023 without adjusting the dosage.

At the CE with Dr. Hudson in June 2022, Claimant reported anxiety, depression, panic, mood swings, forgetfulness, and constant fatigue. Mental status examination revealed good memory and recall, intact language, and abstract reasoning, estimated average intellectual ability, cooperative and friendly behavior, appropriate eye contact, good attention and concentration, ability to perform Serial 7 calculations, alert and oriented presentation, and normal insight, judgment, and impulse control. (Tr. 329-334). Other mental status examination findings included normal/intact memory, alert and/or oriented behavior, normal/good judgment, normal/intact insight, and normal behavior. Claimant was not treated in the ER or hospitalized for any exacerbation of psychological symptoms. She has not seen a dedicated mental health care provider, relying on her PCP for as needed Clonazepam.

Claimant asserts the ALJ failed to apply the correct legal standards when assessing the medical opinions and failed to properly analyze the subjective statements in the record pursuant to SSR-16-3p. (Doc. 11 at 4). The Court finds the decision of the ALJ is consistent with the evidence.

In the instant case, the ALJ determined that Claimant has the RFC to perform light work with restrictions. (Tr. 23). The RFC is the most Claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1545, 20 C.F.R. §416.945. The RFC should not include those activities that Claimant can do sporadically; instead, it can only include what she can sustain for eight hours a day, five days a week. Social Security Ruling 96-8p. The ALJ is required to consider all Claimant's medically determinable impairments, singly and in combination; the statute and regulations allow nothing less and a failure to do so is reversible error. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir 2006). The ALJ may not ignore evidence that does not support her decision, especially when that evidence is significantly probative. *Biggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001). Furthermore, the ALJ must support her conclusions with specific references to the evidence in the record and interpret that evidence fairly. *Winfrey v. Chater,* 92 F.3d 1017, 1024 (10th Cir. 1996) (the ALJ erred by failing to relate her conclusions to the evidence).

Likewise, *SSR* 16-3p states that when considering an individual's subjective statements, the ALJ considers first, whether an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms even exists, and then second, whether the objective medical evidence is consistent with the individual's statements. When evaluating severity, the ALJ must address the objective medical *and other* evidence regarding the intensity, persistence, and limiting effects of the claimant's symptoms. *See Carpenter v. Astrue,* 537 F.3d 1264, 1268 (10th Cir. 2008). This includes the factors as outlined in *SSR* 16-3p, such as an

individual's repeated attempts to find relief from pain, the drugs prescribed for pain, the side effects from pain medication, the effectiveness of the pain medication, and how an individual's activities of daily living have been affected by her pain. *Id.*

At the July 27, 2023, hearing, Claimant testified that she lives with her husband and two children. (Tr. 47). She has difficulty driving sometimes due to dizziness from high blood pressure or loss of feeling in her hands. (Tr. 49-50). She had a part-time job as an office manager/secretary (Tr. 216) where she typed on a keyboard, which caused her hands to swell. (Tr. 54). Claimant also testified that her feet would swell and her toes burned. (Tr. 55-56). Claimant also described pain with her knees, hips, ankles, elbows, and lower back. (Tr. 66). Her Hashimoto's flares had occurred every 2 to 3 weeks for the prior 4 months since she was taken off Hydroxychloroquine. (Tr. 60). During a flare, she woke up in pain, had no stability, her blood pressure fluctuated, and she felt "spacey" and exhausted. (Tr. 60). After discussing Claimant's reported symptoms, the ALJ found her "statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the objective evidence." (Tr. 26).

An ALJ "will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Nonetheless, objective medical evidence is highly relevant to the symptom evaluation. *See id*. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."); Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"). Here, the ALJ acknowledged Claimant's subjective complaints, including hand swelling, exhaustion, and body pain (Tr. 24-25) but found that Claimant's reported symptoms were inconsistent with the objective evidence and her conservative

treatment. (Tr. 27). This finding is due "particular deference" by the Court. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).

Further, regarding the objective medical evidence, the ALJ noted that Claimant exhibited tenderness in the left elbow and lateral wrists, hips, knees, ankles, fingers, and toes during her July 2023 rheumatology examination. (Tr. 27, citing Tr. 606). However, Claimant did not exhibit pedal edema, and she had intact sensation, normal motor strength, and normal gait. (Tr. 27, citing Tr. 606). The ALJ noted similar findings during Claimant's April 2022 consultative examination that also included intact reflexes, normal range of motion throughout the joints and spine, and 5/5 strength throughout the extremities. (Tr. 27, citing Tr. 321).

As the ALJ pointed out, Claimant was prescribed Hydroxychloroquine in August 2022 and reported it was effective to her providers. (Tr. 27, citing Tr. 418, 603). The ALJ concluded that Claimant received conservative treatment (medication) for her joint symptoms and had not undergone other forms of treatment such as physical therapy or injections. (Tr. 27). *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the . . . extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). The ALJ considered Claimant's conservative treatment consisting of medication, her reported efficacy of medication to assuage her pain, and the objective examination findings showing only diffuse joint tenderness but no loss of sensation, reflexes, or motor strength in the extremities in addition to her reported symptoms of brain fog, fatigue, and dizziness in assigning an RFC with exertional, manipulative, and postural limitations. (Tr. 27).

While Claimant reported Hashimoto's flares every 2 to 3 weeks since being taken off Hydroxychloroquine in February 2023, the only medical record after this period is her visit with

Jocelyn Eslick, NP, in July 2023. (Tr. 27, citing Tr. 595-616). The ALJ concluded that since there was no change in Claimant's dosage of Levothyroxine (which remained the same since August 2022) and her TSH levels remained mostly normal, the Levothyroxine was effective at controlling her thyroid levels and thus, her symptoms. (Tr. 27, *see e.g.*, 410, 419, 422, 431). The ALJ weighed the above evidence against Claimant's testimony of increased fatigue and pain during her flares to find exertional, manipulative, and postural RFC limitations. (Tr. 27).

Claimant argues the ALJ misconstrued the record by stating that the cause behind her pain and swelling was unclear as she was diagnosed with inflammatory arthritis "such as Sjogren's" and then later assessed with inflammatory spondylopathy and ankylosing spondylitis. (Doc. 11 at 8). However, while Nurse Eslick diagnosed Claimant with inflammatory spondylopathy and ankylosing spondylitis in July 2023 (Tr. 599-601, 606-607), Claimant also testified at the hearing that Nurse Eslick stated she would not be certain if Claimant had some other arthritis until "blood work came back and we had more visits." (Tr. 57). In any event, the ALJ explained that both Hashimoto's and arthritis could both cause Claimant's symptoms, and "regardless of the source of these symptoms," the objective medical evidence supported that Claimant experienced these symptoms. (Tr. 26). The ALJ considered the functional impacts of those symptoms as appropriate. Even if the ALJ determined the exact cause of her joint stiffness and pain, the outcome of the decision would not have changed. *See Flint v. Sullivan*, 951 F.2d 264, 268 (10th Cir. 1991) (stating that "the issue is the existence of a disability at a particular time and *not the identification of a cause*") (emphasis added). Even Claimant testified that the multiple diagnoses caused her symptoms of joint stiffness and muscle pain as "they all kind of bounce off . . . work off of each other . . . [i]t's hard to pinpoint which one is actually causing the problem because they all have similar symptoms." (Tr. 56).

Therefore, the Court finds the ALJ supported her conclusions, citing to objective medical evidence, conservative treatment, efficacy of medication, and the conflicts between Claimant's testimony and the medical evidence and accounted for all of Claimant's reported symptoms in the RFC that were supported by the record.

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. Accordingly, the Court finds the decision of the Commissioner is hereby AFFIRMED.

**IT IS SO ORDERD this 12th day of February, 2025.**

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**